## IN THE UNITED STATES DISTRICT COURT
## EASTERN DIVISION OF TENNESSEE
## AT KNOXVILLE

DOLLIE PORTER, Individually and as Next of )
Kin of ERIC C. PORTER, Deceased with no )
surviving children, )
                     )
     Plaintiff, )
                     )
vs. )
                     )
KNOX COUNTY TENNESSEE, KNOX )
COUNTY SHERIFF'S OFFICE, )
SHERIFF JIMMY "J.J." JONES, in his official )
capacity of Knox County Sheriff, )
DONALD S. KEEBLE, M.D., and )
HELEN ROSS McNABB CENTER, INC., )
                     )
     Defendants. )

NO. _____

**JURY DEMAND**

## COMPLAINT

Comes now the Plaintiff Dollie Porter, Individually and as next of kin of Eric C. Porter, deceased, and for a cause of action against the Defendants Knox County, Tennessee; Knox County Sheriff's Office; Sheriff Jimmy (J.J.) Jones, in his official capacity of Knox County Sheriff; Donald S. Keeble, M.D.; and the Helen Ross McNabb Center, Inc., would allege as follows:

### I. PARTIES

1.    Plaintiff Dollie Porter is an adult citizen of the United States, is a resident of the State of Tennessee and is the mother and next of kin of Eric C. Porter, deceased. There is no surviving spouse or surviving children of Eric C. Porter.

2.     Defendant Knox County Tennessee ("Knox County") is a governmental entity established and organized under the laws of the State of Tennessee and as such operates and establishes policy for the Knox County Sheriff's Office and the Roger D. Wilson Detention Facility, and is an entity subject to suit pursuant to 42 U.S.C. § 1983. Defendant Knox County is responsible for the corrections division within its jurisdiction. At all times material herein, Defendant Knox County was acting in its capacity as a governmental entity in charge of the administration and control of corrections within the boundaries of Knox County. Defendant Knox County may be served with process at the Knox County Law Director's Office, 400 Main Street, Suite 612, Knoxville, Tennessee 37902.

3.     Defendant Knox County Sheriff's Office ("KCSO"), thru its employees, is a governmental entity organized under the laws of the state of Tennessee, and is responsible for the administration and policies at, among other places, the Roger D. Wilson Detention Facility located in Knox County. At all times material to this cause, Defendant KCSO was acting in its capacity as an entity in charge of all policies and procedures at the Roger D. Wilson Detention Facility, including the safety and well-being of inmates incarcerated at said facility. Defendant KCSO may be served with process at the Knox County Law Director's Office, 400 Main Street, Suite 612, Knoxville, Tennessee 37902.

4.     Defendant Jimmy "J.J." Jones ("Jones") is the Sheriff of Knox County, and is an employee of Knox County and the KCSO. As Sheriff, Defendant Jones is responsible for the administration of KCSO, including all aspects related to the corrections division at the Roger D. Wilson Detention Facility. At all times material to this cause, Defendant Jones was acting in his official capacity as an employee of Knox County and KCSO and was therefore acting under color of law. Suit is brought against Defendant Jones in his official capacity of Knox County Sheriff. Defendant Jones

-2-

may be served with process at the Knox County Law Director's Office, 400 Main Street, Suite 612, Knoxville, Tennessee 37902.

5.     Defendant Donald S. Keeble, M.D. (Keeble), on information and belief, is a contract service provider of Knox County and the KCSO and was responsible for all medical care provided to inmates at the Roger D. Wilson Detention Facility at all times material to this action. Defendant Keeble was further ultimately responsible for the supervision and training of all KCSO personnel relating to medical care of inmates. Defendant Keeble may be served with process at 1924 Alcoa Highway, GSM Bldg., Knoxville, Tennessee 37920.

6.     Defendant Helen Ross McNabb Center, Inc., (HRMC) on information and belief, is a contract service provider of Knox County and KCSO and was responsible for general mental health services and meeting ACA Standards for screening all inmates at the Roger D. Wilson Detention Facility at all times material to this action. Defendant HRMC was further ultimately responsible for the supervision and training of all KCSO personnel relating to mental health care of inmates. The Defendant HRMC may be served with process through its registered agent for service of process, Jerry Vagnier at 201 W. Springdale Avenue, Knoxville, Tennessee 37917.

## II. JURISDICTION AND VENUE

7.     This cause of action arises out of the Defendants' actions, and inaction, which occurred on or about January 25, 2016 through January 28, 2016 at the Roger D. Wilson Detention Facility located at 5001 Maloneyville Road, Knoxville, Tennessee.

8.     Venue lies with this Court pursuant to 28 U.S.C. §1391, as all the Defendants are residents of this district and all the acts or omissions which give rise to this cause of action occurred within this district.

-3-

9. Jurisdiction lies with this Court pursuant to federal jurisdiction, 28 U.S.C. §1331, 28 U.S.C. §1343(1)(2)(3)(4), 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, 42 U.S.C. §1988, and pursuant to the Eighth and Fourteenth Amendments of the Constitution of the United States of America. The Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. §1367.

10. Each of the acts of Defendants set forth herein were performed by each of these Defendants under the color and pretense of the constitution, statutes, regulations, customs and usages of the United States of America and the State of Tennessee and under the authority of their agency with the State of Tennessee and Knox County Tennessee.

11. All of the acts complained of herein occurred within this jurisdiction and this action is commenced within one (1) year of the date of the incident which is the subject matter of this litigation.

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all acts complained of are so related within this Court's original jurisdiction that they form the same case and controversy.

### III. COMPLIANCE WITH TENNESSEE CODE ANNOTATED § 29-26-121 AND TENNESSEE CODE ANNOTATED § 29-26-123

13. This Complaint alleges a healthcare liability action as defined by TENN. CODE ANN. § 29-26-101.

14. Plaintiff gave notice to Defendants of a potential claim at least sixty (60) days in advance of filing this Complaint in compliance with the provisions of Tennessee Code Annotated Section 29-26-121, and have otherwise complied with Tennessee Code Annotated Section 29-26-121(a). The

-4-

documents setting forth evidence of compliance are attached hereto as <u>Exhibit A</u>, and incorporated by referenced as if fully set forth.

15. A Certificate of Good Faith is attached hereto as <u>Exhibit B</u>, and incorporated by reference as if fully set forth.

## IV. <u>FACTS</u>

Plaintiff hereby incorporates, in their entirety, each and every allegation of this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

16. Eric Porter, son of Plaintiff Dollie Porter, was a 28 year old male living in the Powell community, who had contact with law enforcement on multiple occasions.

17. As a result of these interactions with law enforcement, Mr. Porter was well known to KCSO as a drug addict with bipolar disorder.

18. Because, in part, of Eric Porter's addiction and mental health disorder, Mr. Porter was incarcerated at the Roger D. Wilson Detention Facility and the State of Tennessee prison system multiple times over the previous 10 or more years.

19. Before his incarceration on January 25, 2016, Eric Porter was most recently in the custody of the Tennessee Department of Corrections, and was released on parole in October of 2015.

20. Following his release from the Tennessee Department of Corrections, Eric Porter was living at home with his mother. He did not continue to take his prescribed medications past his release in October, 2015 and once again began to use illicit drugs as he had in the past in his efforts to control the symptoms of his bipolar mental disorder.

21. On or about January 25, 2016, Eric Porter was picked up at his residence by Defendant KCSO on outstanding warrants, including a violation of parole, after being convinced to come out of the home by KCSO officers and his mother, Dollie Porter.

22. Eric Porter was then transported to the Roger D. Wilson Detention Facility where he was to be held for an undetermined amount of time, before likely being transferred to a Tennessee State Prison to finish out his suspended sentence.

23. Eric Porter, who was well known to the staff at the Roger D. Wilson Detention Facility as having a bipolar mental disorder and to be a frequent drug user, was then led through the intake process, and thereupon became an inmate at the Roger D. Wilson Detention Facility located at 5001 Maloneyville Road, Knoxville, Tennessee.

24. In addition to his records already on file, while going through the intake process, Eric Porter was questioned about his drug use and any mental disorders for which he might have been treated in the past.

25. Both drug use and mental health issues were answered as "yes" during Eric Porter's intake process and he was classified as an inmate designated for the medical unit of the Roger D. Wilson Detention Facility.

26. At approximately 4:34 p.m. on January 25, 2016, Eric Porter spoke with his mother, Plaintiff Dollie Porter, for a few minutes, telling her that the next few days were going to be "really rough" due to drug withdrawal. This was the last communication Eric Porter had with his mother.

27. Later in the day on January 25, 2016, Eric Porter was evaluated by Jessica Jeffers, LPN and at approximately 6:30 p.m. that evening, she charted in his records that Mr. Porter:

(a)     Has a history of taking 600-1000 MG of Morphine intravenously per day, with the last use being on January 25, 2016;

(b)     Has a history of taking 80-200 MG of Methadone intravenously per day, with the last use being on January 24, 2015;

-6-

(c)    Has a history of taking Xanax via "street use," with the last use being a few

days prior to January 25, 2016;

(d)    Has fresh "track marks" on his arms;

(e)    Has a history of taking Trazodone and Lithium, which were prescribed to treat

his bi-polar mental disorder; and

(f)    Has not taken Trazodone or Lithium since he was released from state prison

in October of 2015.

28.    Jessica Jeffers, LPN charted that she faxed a release of medical records to the Tennessee Department of Corrections, but there is no record of the release being sent.

29.    Jessica Jeffers, LPN on January 25, 2016 charted that no medication would be started.

30.    On information and belief, the medical unit at the KCSO and the Roger D. Wilson Detention Facility did not receive any medical records, nor did they make any effort to determine when to begin to administer any medication to Eric Porter once he was in their sole custody.

31.    It was obvious, based on the intake report alone, that Mr. Porter would be going through serious withdrawals when the illicit drugs wore off, and that Mr. Porter needed a mental health assessment. Nurse Jeffers did not require or request that a medical doctor or mental health professional review Mr. Porter's needs. Nurse Jeffers deviated from the standard of care, failing to require an assessment by a medical doctor, and failing to require an assessment by HRMC.

32.    On January 25, 2016, at approximately 6:30 p.m., Jessica Jeffers, LPN charted that blood pressure readings should be taken twice a day to monitor for possible symptoms of withdrawal.

33.    There are no notations in any of the records at the detention facility that anyone ever took blood pressure readings after Mr. Porter was returned to Pre-Classification, even though the order was noted in his intake records.

34.    Despite knowing of the serious mental health conditions and possible withdrawals that affected or would affect Eric Porter, the medical staff did not keep Eric Porter in the medical unit, but instead sent him to pre-classification, Building 1, Pod C, Room 104 in the Roger D. Wilson Detention Facility, where he was infrequently checked on by officers on duty.

35.    On January 28, 2016, approximately 3 days, or 72 hours, after Eric Porter entered the Roger D. Wilson Detention Facility, he was still in the pre-classification cell 1C/104 in his pre-classification uniform.

36.    KCSO policy requires that classification must take place within 48 hours of the inmate entering the facility. KCSO deviated from this policy by not classifying Mr. Porter within the time frame set out in its own policies and procedures manuals.

37.    KCSO is aware inmates are at an increased risk for suicide during shift change, and KCSO policy instructs that shift change is a time to be extra vigilant in the supervision of inmates for purposes of suicide prevention. The "roll call lesson plan" for 1st and 2nd shifts at the Roger D. Wilson Detention Facility on January 28, 2016 was policy 3.03, Suicide Prevention Plan. KCSO deviated from this policy by not properly observing Eric Porter during shift change.

38.    On January 28, 2016, Mr. Porter was left alone in his cell. At approximately 2:27 p.m., shortly after shift change, Eric Porter was found hanging in his cell with no pulse and not breathing. An ambulance was called at approximately 2:32 p.m. to transport Mr. Porter to the hospital.

39.    After almost seven (7) agonizing days in the hospital, Eric Porter died on February 4, 2016 at approximately 1:14 p.m.

40.    On information and belief, Defendant KCSO and Knox County still have not conducted any investigations to determine; (1) the reasons policy was violated; (2) the reasons Eric Porter was

-8-

not provided with the medical treatment he desperately needed to stay alive; and (3) why Mr. Porter was shown total and deliberate indifference by governmental Defendants in this action. As a result of this deliberate indifference and failure to follow policy, Eric Porter suffered an irreversible cerebral hypoxic injury, which killed him.

41.    As a further direct and proximate result of the actions of the Defendants as set forth herein, Eric Porter suffered a severe cerebral injury which caused dysfunction of his central nervous system, ultimately resulting in his death.

42.    At all times material, all actions of Jessica Jeffers, LPN were performed by her in her official capacity and by virtue of her position as an employee and/or agent of Knox County and KCSO.

43.    Mr. Porter hanged himself because of neglect and failure to treat his symptoms. Defendants caused his death.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT
### SHERIFF JIMMY "J.J"JONES

Plaintiff does hereby incorporate, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

44.    Defendant Jones, in his official capacity as Sheriff of Knox County and the KCSO, is responsible for promulgating policies which direct the actions of correctional officers and are further responsible for the training of correctional officers.

45.    Defendant Jones failed to train correctional officers at the KCSO and the Roger D. Wilson Detention Facility with respect to administering appropriate policy and procedures for identifying and acting upon suicidal tendencies, mental health issues, drug abuse and withdrawal, appropriate

-9-

classification procedures, and suicide prevention to prisoners who are in serious medical distress.

46.    The failure of Defendant Jones to promulgate policies and train correctional officers at the KCSO and the Roger D. Wilson Detention Facility with regard to administering appropriate policy and procedures for identifying and acting upon suicidal tendencies, mental health issues, drug abuse and withdrawal, appropriate classification procedures, and suicide prevention to prisoners who are in serious medical distress amounts to deliberate indifference and reckless indifference to the serious medical needs of inmates at the Roger D. Wilson Detention Facility, including Eric C. Porter.

47.    Defendant Jones committed the above-described actions and/or omissions under the color of law and by virtue of his authority as an employee of Defendants' Knox County and KCSO, and thereby substantially deprived Eric C. Porter of his rights, privileges and immunities guaranteed to him as a citizen of the United States, in violation of 42 U.S.C. §1983. This Defendant further deprived Eric Porter of the rights guaranteed to him by the Eighth Amendment and Fourteenth Amendment of the United States Constitution, including, but not limited to: (a) freedom from cruel and unusual punishments; (b) freedom from deprivation of liberty without due process of law; and (c) failure to respond to the critical medical needs of Eric Porter. Said actions and/or omissions by Defendant Jones constitute deliberate indifference to the serious medical needs of Eric Porter.

48.    Alternatively, Defendant Jones is liable for the actions of Nurse Jeffers and any unnamed medical personnel, classification officer, or corrections officer by virtue of the fact that the medical personnel or officers involved in this incident were not reprimanded, disciplined or terminated, and, accordingly, this Defendant ratified, condoned, acquiesced or approved their conduct in this matter in all respects.

49. The aforementioned actions of the individual medical personnel and officers were proximately caused by the policies of Defendants Knox County and KCSO, as administered by Defendant Jones and such policies were the underlying cause of Eric Porter's injuries and subsequent death.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS KNOX COUNTY AND KCSO

Plaintiff does hereby incorporate, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

50. At all times material herein, the Defendants Knox County and KCSO, were acting by virtue of the authority granted by the State of Tennessee and by virtue of their position as agents of the State of Tennessee.

51. The actions of the Defendants Knox County and KCSO, by and through its employees and contract service providers, Defendants Jones, Keeble, Helen Ross McNabb Center, Inc., and other unnamed medical personnel, classification officers, and corrections officers in denying Eric Porter proper medical attention, despite his obvious then present critical medical needs, was unnecessary and unjustifiable under the circumstances then and there existing and posed an unreasonable risk of serious harm to Eric Porter, in violation of the rights secured to him by the Eighth Amendment and the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

52. The Defendants Knox County and KCSO are liable for the unconstitutional actions of its employees and contract service providers, Defendants Jones, Keeble, Helen Ross McNabb Center, Inc. and other unnamed medical personnel, classification officers, and corrections officers pursuant to the doctrine of respondeat superior.

-11-

53. The Defendants Knox County and KCSO negligently failed to adequately train and educate its employees and contract service providers Defendants Jones, Keeble, Helen Ross McNabb Center, Inc. and other unnamed medical personnel, classification officers, and corrections officers, with respect to providing medical attention to inmates in need of medical attention, and said failure to adequately train constitutes a deliberate and reckless indifference to the welfare and serious medical needs of inmates at the Roger D. Wilson Detention Facility, including Eric Porter.

54. The Defendants Knox County and KCSO negligently allowed its employees and contract service providers, Defendants Jones, Keeble, Helen Ross McNabb Center, Inc., and other unnamed medical personnel, classification officers, and corrections officers, to engage in conduct that violated the constitutional rights of persons in custody, and specifically Eric Porter. Said conduct exhibits reckless disregard and deliberate indifference to the welfare and serious medical needs of inmates at the Roger D. Wilson Detention Facility, and specifically Eric Porter.

55. Defendants Knox County and KCSO, committed the above-described actions and/or omissions under the color of law and by virtue of their authority as agents of the state of Tennessee and thereby substantially deprived Eric Porter of his rights, privileges and immunities guaranteed to him as a citizen of the United States, in violation of 42 U.S.C. §1983, and further deprived Eric Porter of the rights guaranteed to him by the Eighth Amendment and Fourteenth Amendment of the United States Constitution, including, but not limited to: (a) freedom from cruel and unusual punishments; (b) freedom from deprivation of liberty without due process of law; and (c) failure to respond to the critical medical needs of Eric Porter. These actions and/or omissions by Defendants Knox County and KCSO, by and through their employees and contract service providers, constitutes deliberate indifference to the serious medical needs of Eric Porter.

-12-

56. KCSO and Knox County were operating a health care facility. They employed health care practitioners. These defendants, through their employees, contracting governmental entity or employer, deviated from the applicable standard of care. They committed medical malpractice.

57. The aforementioned actions of the Defendants Knox County and KCSO proximately caused the injuries to and resulting death of Eric Porter and the subsequent injuries and damages to Plaintiff.

### THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### DONALD S. KEEBLE, M.D. AND HELEN ROSS McNABB CENTER, INC.

Plaintiff does hereby incorporate, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

58. Plaintiff alleges that Defendant Keeble, pursuant to his contract with Knox County, was to be; (1) present at the Roger D. Wilson Detention Facility at least three half days per week; (2) on call 24-hours per day; and (3) in the event of his absence was to provide a substitute in his place. There is no record that Eric Porter was ever seen, questioned, examined, or that his records were even reviewed by Defendant Keeble at any time from the time of his arrest on January 25, 2015 up to and through January 28, 2015, the date on which he hung himself, a period of four days following his arrest.

59. Plaintiff alleges that Defendant HRMC, pursuant to its contract with Knox County, was to provide mental health assessment and monitoring of inmates at the Roger D. Wilson Detention Facility. This assessment was to include an assessment of past and current use of alcohol and drugs. There is no record that any assessment was performed by any physician or licensed clinical social worker at any time. There is no record or notation in his records that Eric Porter was ever seen,

-13-

questioned, or examined. There is no notation that his records were even reviewed by Defendant HRMC from the time of Mr. Porter's arrest on January 25, 2015 up to and through January 28, 2015, the date on which he hung himself, a period of four days.

60. The failures of Defendant Keeble and Defendant HRMC to discuss with a staff nurse the condition of Eric Porter, or to review the medical records, examine, meet with and question Eric Porter personally with regard to his physical condition and identifying mental health issues, including symptoms of drug abuse and withdrawal, when it was obvious that Eric Porter was a suicide risk, amounts to deliberate indifference and reckless indifference to the serious medical needs of inmates at the Roger D. Wilson Detention Facility, including Eric C. Porter.

61. As a direct and proximate result of these Defendants' actions or omissions as set forth herein, Eric Porter suffered severe cerebral injuries, which ultimately resulted in his death.

**PENDENT CAUSES OF ACTION
AGAINST ALL DEFENDANTS**

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

62. The aforementioned actions of the Defendants, and each of them, resulted in the wrongful death of Eric Porter, giving rise to Plaintiff's state claims pursuant to common and statutory law.

63. Defendants Keeble and Helen Ross McNabb Center, at all times material to this action operated under independent contract with Defendant Knox County to provide medical care and attention to jail inmates, at the detention facility, including Eric Porter. By virtue of this relationship, Defendant Keeble was responsible for the training and supervision of employees of Defendants Knox County and KCSO who provided medical attention to jail inmates.

-14-

64.    Defendant Keeble and Defendant Helen Ross McNabb Center through its employees, are guilty of professional malpractice in that they failed to adequately train and supervise Jessica Jeffers, LPN, to administer emergency medical attention to persons in critical medical need. The Defendant Keeble and Defendant HRMC, through its employees, acted with less than, or failed to act with, ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice in the community.

65.    As a direct and proximate result of the malpractice of Defendants Keeble and HRMC, through their employees, as set forth herein, Eric Porter was not afforded the medical care which would have prevented the injuries which led to his death.

66.    This Court has pendent supplementary jurisdiction to hear and adjudicate these state claims.

67.    The damages which Eric Porter sustained, including pain and suffering, loss of enjoyment of life, loss of future earning capacity, and other damages associated with his injuries and resulting death, were the direct and proximate result of the foregoing acts and omissions by Defendants.

68.    The damages which Plaintiff has sustained due to the death of her son Eric Porter were the direct and proximate result of the foregoing acts and omissions by the Defendants.

## DAMAGES

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

69.    Eric C. Porter died as a direct and proximate result of the aforementioned actions and omissions by the Defendants. The damages for which Plaintiff Dollie Porter, as next of kin of Eric Porter, seeks compensation on behalf of Eric Porter from the Defendants, both jointly and severally,

-15-

include, but are not limited to, the following:

(a)    the wrongful death of Eric Porter;

(b)    medical expenses;

(c)    loss of enjoyment of life;

(d)    loss of earning capacity;

(e)    funeral expenses;

(f)    punitive damages against the applicable Defendants;

(g)    attorneys' fees and costs of this action pursuant to 42 U.S.C. §1988;

(h)    pre and post judgment interest; and

(i)    all such further relief, both general and specific, to which Eric Porter and Plaintiff may be entitled under the premises.

70.    Plaintiff Dollie Porter, individually, has been damaged as a direct and proximate result of the aforementioned actions of the Defendants and the damages for which Plaintiff seeks compensation from the Defendants, both jointly and severally, include but are not limited to:

(a)    loss of love, consortium, society, companionship and services of her son Eric Porter;

(b)    loss of services of Eric Porter;

(c)    punitive damages against the applicable Defendants;

(d)    attorneys' fees and costs pursuant to 42 U.S.C. §1988;

(e)    pre and post judgment interest; and

(e)    all such further relief, both general and specific, to which she may be entitled under the premises.

-16-

## **PRAYERS FOR RELIEF**

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff prays for a judgment against the Defendants, both jointly and severally, for the following:

(a)     That Plaintiff Dollie Porter, individually, be awarded compensatory damages in the amount of Two Million One Hundred Thousand Dollars ($2,100,000.00) for the pecuniary value of the life of Eric Porter, his pain and suffering, and the expenses incurred through the death of Eric Porter;

(b)     That Plaintiff Dollie Porter, individually, be awarded punitive damages against the applicable Defendants in the amount of Four Million Two Hundred Thousand Dollars ($4,200,000.00);

(c)     That Plaintiff Dollie Porter, as next of kin of Eric Porter, be awarded compensatory damages in the amount of One Million One Hundred Thousand Dollars ($1,100,000.00) for the pecuniary value of the life of Eric Porter, his pain and suffering, and the expenses incurred through the death of Eric Porter;

(d)     That Plaintiff Dollie Porter, as next of kin of Eric Porter be awarded punitive damages against the applicable Defendants in the amount of Two Million Two Hundred Thousand Dollars ($2,200,000.00);

(e)     Attorneys' fees and costs pursuant to 42 U.S.C. §1988;

(f)     Pre and post judgment interest; and

(g)     All such further relief, both general and specific, to which the Court may deem Plaintiff entitled.

(h)    Plaintiff demands that a jury be empaneled to hear the issues joined herein.

Respectfully submitted this __19th__ day of January, 2017.

LEIBOWITZ LAW FIRM, PLLC

/s/ Lawrence P. Leibowitz
Lawrence P. Leibowitz (BPR #000974)
Brandon J. Tindell (BPR #033587)
608 S. Gay Street, Suite 200
Knoxville, Tennessee 37902
Telephone: (865) 637-1809
*lpl@leibowitzfirm.com*
*bjt@leibowitzfirm.com*
*Counsel for Plaintiff*

T:\LPL\Porter,Dollie\Complaint